## WHITE v EAST OHIO GAS CO.

Ohio Appeals, 9th Dist, Summit Co

No. 3073. Decided Aug. 12, 1938.

Slabaugh, Seiberling, Huber & Guinther, Akron, for appellee.

Holiday, Grossman & McAfee, Cleveland, and Rockwell, Grant, Doolittle, Thomas & Buckingham, Akron, for appellant.

## OPINION

PER CURIAM:

This action, begun in the Court of Common Pleas of Summit County, is one in which the appellee, the plaintiff below, asks that a decree be entered cancelling a purported instrument of lease for oil and gas, with a direction to the county recorder to make a minute on his record that said purported lease has been cancelled, and further that the title of the appellee, Ross A. White, be quieted as against any claims of the appellant, the defendant below, to the premises. The Court of Common Pleas entered judgment for the plaintiff; that court holding that each of the reasons relied upon by the plaintiff for the relief sought, as hereinafter set out, was well taken. The defendant, The East Ohio Gas Co., has appealed to this court on questions of law and fact.

The facts, most of which have been stipulated, show that in the year 1927, and prior thereto, Elmer Hartong and Idella Hartong, husband and wife, were the owners in fee simple of the real estate involved in this controversy; that in July, 1927, they signed the purported oil and gas lease, which instrument designated The Ohio Fuel Gas Co. as lessee; that such instrument was recorded on the 5th day of October, 1927; that under date of June 17, 1929, The Ohio Fuel Gas Co. executed an assignment of all its rights under the purported lease to The East Ohio Gas Co.; that on July 16, 1929, the real estate was deeded by the Hartongs to Mark Metzger, the deed reciting that the premises were free from encumbrances with certain exceptions, among which appeared the following:

"Also an oil and gas lease to The Ohio Fuel Gas Company, recorded in Volume 1019, page 269, of Summit County Records, assigned to The East Ohio Gas Company by assignment recorded in Volume 1239, page 218, Summit County Records"; that on July 24, 1929, the premises were conveyed by the said Mark Metzger to the appellee, Ross A. White, by deed, in which like exceptions in the matter of encumbrances were recited.

The lease on its face purports to have been signed by the lessors in the presence of two witnesses, and recites that the signatures of the lessors were acknowledged before a notary public. The lease was not signed by the lessee.

Quarterly payments of $14 each, in compliance with the terms of the lease, were made to the Hartongs until the conveyance of the premises to White, the appellee. Payments were then made to White until April, 1937, at which time further payments were refused and the claim made by White that the lease was invalid. White further claimed that he had no knowledge of its invalidity prior to this time.

Upon the questioned lease appears the signature of the Hartongs as lessors, Guy J. Hecker and E. L. Burkett as witnesses, and E. L. Burkett as the notary public who took the acknowledgment of the lessors.

Two main points are urged as warranting the relief sought. They are:

1. That the purported lease is void because it was never properly acknowledged by the Hartongs, the purported

lessors.

2. That because the instrument was not signed by The Ohio Fuel Gas Co., the lessee, the lessors or their successors in title cannot enforce it against the appellant under the statute of frauds, and it is therefore void for lack of mutuality.

The Hartongs testified in the trial that they signed the instrument and intended to execute an oil and gas lease upon their premises to the Ohio Fuel Gas Co. Their signatures were affixed to the instrument in their home, in the presence of one other person. They denied that they had ever acknowledged their signatures before a notary public.

The notary public, Burkett, a man over 80 years of age, testified by deposition that he had no recollection of ever having seen the Hartongs or of ever talking to them. He testified further that it was his practice in signing as a notary on leases of this character to actually take the acknowledgment of the lessors.

The other witness, Guy J. Hecker, also over 80 years of age, testified by deposition that he was a lease man for The Ohio Fuel Gas Co., that he recognized his signature as a witness on the lease, but could not recall the particular transaction. He testified that there was a practice on the part of The Ohio Fuel Gas Co. to send him alone to secure signatures to leases, and that the practice further involved his taking a number of instruments, signed by the land owners, to some notary public or justice of the peace, and leaving them with the officer to put on a certificate of acknowledgment.

The evidence further disclosed that the lease was delivered to the lessee by the lessor: that the rental was regularly paid for almost ten years; that it was not signed by the lessee; that neither the lessee nor its successor in title ever entered into actual possession.

It has long been established in this state that a regular statutory certificate of the acknowledgment of a deed of conveyance made by a hus-

band and wife is, in the absence of fraud, conclusive evidence of the facts therein stated. This rule was pronounced by the Supreme Court in the case of **Baldwin v Snowden, 11 Oh St 203**, and applied to the execution of a real estate mortgage. In the case of **Logan Gas Co. v Keith, 117 Oh St 206**, inferentially the same rule was made to apply to a lease for oil and gas.

The courts of this state are in harmony with the general rule which provides that a deed for the conveyance of lands, signed by the grantor, but subsequently claimed by the said grantor not to have been acknowledged as it purports to have been, cannot be set aside unless the latter fact is shown by clear and convincing proof; that "a mere preponderance of the evidence is not sufficient to support a finding contrary to the certificate of acknowledgment."

**Ford v Osborne, 45 Oh St 1.**

We are of the opinion that this same rule of proof applies to leases for oil and gas.

In considering the evidence in this case, we believe the fact that the Hartongs, in conveying the real estate to Metzger in 1929, recognized the validity of the lease on their property, is significant. This conveyance was made at a time when no controversy existed. It is generally held that the testimony of the parties whose acknowledgment is purported to be certified, unless supported by other evidence, is insufficient to overcome the certificate of the certifying officer; nor will slight corroboration of the acknowledging party overcome the presumption of validity attaching to the certificate.

It is our conclusion that the evidence does not sustain by the required degree of proof the claims of the appellee on this point.

Going now to the second claim: that "because the instrument was not signed by The Ohio Fuel Gas Co., the lessee, the lessors or their successors in title cannot enforce it against the appellant

278

under the statute of frauds," and that it is void for lack of mutuality.

We are of the opinion that a lease of the kind involved in this ▮▮▮ case does not require the signature of the lessee to validate it, and that the claim cannot be successfully urged, under the circumstances of this case, that the lease is invalid for lack of mutuality.

Finding the issues in favor of the appellant, a decree in its favor, dismissing the petition of the appellee, may be prepared and entered.

STEVENS, PJ., LIEGHLEY, J. & DOYLE, J., concur.