WEAVER, EXR., APPELLANT, *v.* CROMMES ET AL., APPELLEES.[*]

---

[*]Motion to certify the record overruled, November 18, 1959.

(No. 556—Decided April 3, 1959.)

*Mr. William H. Thornburgh,* for appellant.
*Messrs. Miller & Bazler,* for appellees.

CRAWFORD, J.   Plaintiff, executor of the estate of John E. Crommes, deceased, has appealed on questions of law from a judgment and order of the Probate Court, declaring null and void a purported deed from Phoebe A. Crommes, now deceased, to John E. Crommes, her husband and plaintiff's decedent, and denying plaintiff's petition to sell property, including that described in the purported deed, to pay debts of the estate.

These facts are clearly established by the evidence, stipulations or pleadings:   Phoebe A. Crommes acquired lot No. 417 in the village of Tipp City by deed dated April 30, 1901; on April 13, 1949, a purported deed was received for record and was recorded by the Recorder of Miami County; this latter deed was dated August 16, 1933; it purported to be a conveyance of the entire fee simple title to lot No. 417 from Phoebe A. Crommes to John E. Crommes, her husband, the decedent; Phoebe A. Crommes died on May 22, 1953, apparently intestate; John E. Crommes died, according to appellee's brief, on October 6, 1956; John E. Crommes devised lot No. 417 to two nieces; on April 27, 1911, the defendant, appellee herein, Joseph R. Crommes, being then six years of age, was legally adopted by Phoebe A. Crommes and John E. Crommes; Joseph R. Crommes

was the only surviving child and next of kin of his adoptive parents; S. (Stanley) O. Mitchell, who served both as notary and as one of the two attesting witnesses to the purported deed of August 16, 1933, died on April 24, 1934.

The deposition of Elwood Gray, the surviving witness to the purported deed of August 16, 1933, was taken on June 10, 1957, and was by agreement admitted as part of the evidence in this case. He testified that he did not see Phoebe A. Crommes sign the deed, did not see any other signatures on it at the time he signed, saw no one else sign it, and that only he and the decedent grantee, John E. Crommes, were present on the occasion when he signed as an attesting witness. He said this occurred in the office of the Board of Public Affairs of Tipp City, of which board Gray was president and secretary, and Stanley O. Mitchell was clerk.

The force of Gray's testimony as to this event, which occurred nearly 24 years before, appears considerably weakened by his uncertain memory as to facts connected with the case, which occurred within recent months, and his lack of knowledge of the nature and appearance of the paper which he signed. His testimony must be weighed in the light of such of his answers as the following:

"A. Well, as far as I can tell you I know that I have seen it [the deed] sometime before, but I would not say that I ever read it before, so I could not very well say what it is all about.

"Q. Well, does it have a title to it? A. Just what do you mean by title?

"Q. Is there anything written across the top of it? A. Just a number up there.

"Q. Mr. Gray, have you ever seen a document like that before, or anything similar to it? A. No sir, that is not to my recollection.

"* * *

"Q. Do you know whether Mrs. Phoebe Crommes was present at that time? A. No, I do not know.

"* * *

"Q. Did you at that time know the duties of a witness to a deed? A. Well I didn't even know that it was a deed that I

was signing. I never read it, and had no more idea what its contents were than anything.

"* * *

"Q. And, as I understand it, you did not look to see if there was anything else on there, any other writing or signature, you just signed the document where you were asked to sign it, is that right? A. Yes, that's right.

"Q. You didn't look to see if there were any other signature on the document or not, did you, Mr. Gray? A. No sir, I didn't.

"* * *

"Q. But you did not look beyond the place that he told you to sign, did you? A. No I did not."

The only other witness at the hearing was defendant, appellee herein, Joseph R. Crommes. The substance of his testimony was that on the date which the deed bears, August 16, 1933, he with his wife and his mother, Phoebe A. Crommes, the grantor, were absent from the state of Ohio on a visit to Maryland, which visit began about August 13th and lasted until about the end of August.

His testimony was given at the hearing in Probate Court on December 20, 1957. Its accuracy must be considered in the light of his further testimony:

"Q. Approximately what were the dates of this trip? A. We left here along about the 13th of August and arrived back about a week before school started—the last of August."

Bearing in mind that August 16, 1933 (the date appearing on the deed), fell on Wednesday, let us examine his further testimony:

"Q. Do you recall what day of the week you left to go on this trip? A. Well, it was the first part of the week, because in them days it took two days to go. It aint like today, you can make it in one day—and we stopped in at Uncle Bert's, Bill's daddy-in-law.

"Q. What makes you so sure this was August? A. Because I can remember at that time of year I was figuring we arrived back here just about a week before school started and we left along around the first part of the week, it must have been around the 12th, 13th or 14th."

"* * *

"Q. Have you checked a calendar of 1933? A. No.

"Q. How do you know you left on the 13th of August? A. Because I know it was approximately that time. I had the car setting at the side of the house—I can show you the house where I lived—I overhauled the automobile."

The name S. O. Mitchell appears as a witness on the deed, and the name of Stanley O. Mitchell (in similar handwriting) as notary. There also appears the mark of Phoebe A. Crommes who, according to Elwood Gray, could neither read nor write.

This deed appears upon its face to have been executed in due form. The presumption of validity which flows from this fact can be overcome only by clear and convincing proof; and he who challenges it must sustain the burden of such proof. 26A Corpus Juris Secundum, 31, Deeds, Section 190; *Ford* v. *Osborne*, 45 Ohio St., 1, 12 N. E., 526; *Willis* v. *Baker, Gdn.*, 75 Ohio St., 291, 79 N. E., 466; *Foster* v. *Foster*, 3 Ohio Law Abs., 751; *Kerins* v. *Maumee Valley Mtge. Co.*, 7 Ohio Law Abs., 43; *Schueler* v. *Lynam*, 80 Ohio App., 325, 75 N. E. (2d), 464; *Laymon* v. *Bennett*, 75 Ohio App., 233, 61 N. E. (2d), 624; and see *Potter* v. *Potter*, 27 Ohio St., 84.

In the case of *Ford* v. *Osborne, supra*, the court observed, on page 4 of the opinion, "* * * the genuine attestation of a deceased witness has, in law, the force and effect of a living one, who is called and verifies under oath the truth of his attestation."

The Supreme Court has said that in the absence of fraud a regular statutory certificate of the acknowledgment of a deed is conclusive evidence of the facts therein stated. *Baldwin* v. *Snowden*, 11 Ohio St., 203, 78 Am. Dec., 303.

It appears from this deed that the deceased witness, S. (Stanley) O. Mitchell, not only signed as an attesting witness but also executed the certificate of acknowledgment. In the face of all this, the vague and uncertain testimony of the living witness, Elwood Gray, in attempting to explain his admitted signature, is of doubtful significance.

Nor is Gray's testimony materially aided by the equally vague and indefinite memory of the appellee, testifying more than 24 years later about a trip to Maryland in 1933 upon which

he bases his contention that the grantor was absent from this state on the precise date of the deed. The ordinary "infirmity of interested testimony" (*Ford* v. *Osborne, supra* [45 Ohio St., 1], page 3) is surely not removed by lapse of time and dimness of memory.

"It is the settled policy of the state, as indicated by a uniform course of practice in its courts, and by repeated decisions of this court, that instruments of this solemn character, executed in conformity to the provisions of the deeds act, shall not be set aside or defeated of their natural purpose, except upon proper allegations which are supported by evidence of a clear and convincing character. The mere preponderance of evidence, which is sufficient to determine the verdicts of juries in civil actions, is not sufficient. *Potter* v. *Potter*, 27 Ohio St., 84; *Ford* v. *Osborne*, 45 Ohio St., 1." *National Bank* v. *Wheelock*, 52 Ohio St., 534, at page 550, 40 N. E., 636, 49 Am. St. Rep., 738.

While the mere act of recording a deed cannot serve to make regular that which is in fact irregular, it is nevertheless notice to the world of what it purports to be. This deed was received for record on April 13, 1949, and recorded on April 20. Phoebe A. Crommes, the grantor, did not die until May 22, 1953, slightly more than 4 years later. And the record discloses no challenge of its validity until the filing of defendant-appellee's answer and cross-petition herein on May 15, 1957, slightly more than 8 years after the deed was recorded, and 7 months after the apparent date of death of John E. Crommes.

It is the contention of defendant-appellee, Joseph R. Crommes that, the deed being invalid, his mother died seized of the lot in fee simple; that he and his father, John E. Crommes, were her only heirs at law; and that each took an undivided one-half interest in the lot. Thus he concedes in his pleading and by a statement of his counsel at the hearing, that the decedent died seized of at least an undivided one-half interest in the lot. Any fractional interest of the decedent will support a land sale proceeding. Section 2127.08, Revised Code.

It also appears that the property sought to be sold includes, in addition to the lot above described, another parcel admittedly owned by the decedent. This likewise supports the proceeding.

Plaintiff, appellant herein, contends that even if this instrument were to be held ineffective as a deed, it is nevertheless valid as a contract to convey. The Probate Court rejected this contention, the entry reciting "that said defective deed should not be construed as a contract to convey as there was no valuable consideration."

However, the deed recites valuable consideration in these words: "In consideration of the sum of one dollar and other considerations of value not herein mentioned."

The burden of proof, where the consideration of a deed is attacked, ordinarily is on the person attacking it. 26A Corpus Juris Secundum, 29, Deeds, Section 189. The consideration which is expressed in a deed cannot be disregarded on slight evidence, and evidence which is merely of a negative character has been held insufficient to show the absence of consideration. 26A Corpus Juris Secundum, 87, Deeds, Section 207.

The only evidence which appellee has invoked upon this point is the absence of revenue stamps upon the deed. That fact is at most no more than negative evidence as to the amount of consideration and is no proof whatever of the absence of consideration. For if the consideration does not exceed $100, no stamp is required. Section 4361, Title 26, U. S. Code. This was likewise true on the date of the deed. 47 Stats. at L., Pt. 1, 275, Section 725. And the amount is immaterial; any valuable consideration, though nominal, is sufficient. 17 Ohio Jurisprudence (2d), 147, Deeds, Section 46.

Hence, even if this deed were defective, which has not been proved, it would still operate as a contract to convey. 17 Ohio Jurisprudence (2d), 205, Deeds, Section 104. So the decedent, in addition to being admittedly the owner in fee simple of an undivided one-half interest in Lot No. 417, was also at least the equitable owner of the other half. An equitable interest is likewise subject to sale in these proceedings. Section 2127.07, Revised Code.

The Probate Court, having jurisdiction of the parties and the subject matter, had full power to act and to exercise its plenary powers. Section 2127.18, Revised Code; Section 2101.24, Revised Code; 23 Ohio Jurisprudence (2d), 30, Executors and

Administrators, Section 430. The court can no longer order conveyance by Phoebe A. Crommes, deceased. But if, claiming through her, appellee should be considered holder of the bare legal title to the half interest, the Probate Court could and should make an appropriate order divesting him of such title and ordering the sale of the property.

It is our conclusion that the decedent was admittedly the owner of at least an undivided one-half interest in Lot No. 417 here in question, and the undisputed owner of other property listed in the petition to sell, so that in any case an order of sale should have issued; that the appellee, having challenged the validity of the deed to Lot No. 417, must sustain the burden of proving it defective by clear and convincing evidence, and that he has failed to do so; that even if the deed were defective, it would still operate as a contract to convey, so that any interest appellee might have acquired through the grantor was subject to such contract and could amount to nothing more than a bare legal title, which would not prevent the Probate Court from ordering sale of the entire property and conveyance of a fee simple title to the purchaser, free of any and all claims by the appellee.

The judgment is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

WISEMAN, P. J., and KERNS, J., concur.